MORGAN, LEWIS & BOCKIUS LLP
Andrew P. Frederick, State Bar No. 284832
andrew.frederick@morganlewis.com
Michelle L. Quach, State Bar No. 335098
michelle.quach@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304
Tel: +1.650.843.4000
Fax: +1.650.843.4001

Attorneys for Defendants
AMERISOURCEBERGEN DRUG CORP.;
CENCORA, INC.; AMERISOURCEBERGEN
SERVICES CORP.;
AMERISOURCEBERGEN SPECIALTY
GROUP, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS PULIDO, an individual, on behalf of Plaintiff, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>AMERISOURCEBERGEN DRUG CORPORATION, a Delaware corporation; CENCORA, INC., a Delaware corporation; AMERISOURCEBERGEN SERVICES CORPORATION, a Delaware corporation; AMERISOURCEBERGEN SPECIALTY GROUP, LLC, a Delaware limited liability company; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. ______________________<br><br>[Riverside Superior Court Case No. CVRI2602511]<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CASE TO FEDERAL COURT**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, 1453]** |

# TABLE OF CONTENTS

Page


I. SUMMARY OF COMPLAINT ..... 1

II. THE REMOVAL IS TIMELY ..... 2

III. THIS COURT HAS DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA"), 28 U.S.C. §§ 1332(D) AND 1453 ..... 3

- A. Complete Diversity of Citizenship Exists. ..... 4
  - 1. Plaintiff Is a Citizen of California. ..... 4
  - 2. Defendants Are Citizens of Delaware, Texas, and Pennsylvania. ..... 5
- B. There Are More Than 100 Putative Class Members. ..... 7
- C. The Amount-in-Controversy Requirement Is Satisfied. ..... 7
  - 1. Plaintiff's Meal Break Claim Places at Least $2,751,020.86 in Controversy. ..... 9
  - 2. Plaintiff's Rest Break Claim Places at Least $2,821,443.59 in Controversy. ..... 10
  - 3. Plaintiff's Minimum Wage Claim Places at Least $416,910 in Controversy. ..... 12
  - 4. Plaintiff's Waiting Time Penalties Claim Places Approximately $3,018,607.20 in Controversy. ..... 13
  - 5. Plaintiff's Wage Statement Claim Places at Least $997,350 in Controversy. ..... 14
  - 6. The Amount in Controversy for Plaintiff's Claims Exceeds $5,000,000. ..... 15

IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED ..... 17

V. CONCLUSION ..... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Church of Scientology Int'l*,
243 F.3d 546 (9th Cir. 2000) .......... 4

*Boon v. Allstate Ins. Co.*,
229 F. Supp. 2d 1016 (C.D. Cal. 2002) .......... 4

*Brinker v. Superior Court*,
53 Cal. 4th 1004 (2012) .......... 10, 11

*Campbell v. Vitran Exp., Inc.*,
471 F. App'x 646 (9th Cir. 2012) .......... 8

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
135 S.Ct. 547 (2014) .......... 7, 8

*Fritsch v. Swift Transportation Co. of Arizona, LLC*,
899 F.3d 785 (9th Cir. 2018) .......... 16

*Kanter v. Warner-Lambert Co.*,
265 F.3d 853 (9th Cir. 2001) .......... 4

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*,
199 F. Supp. 2d 993 (C.D. Cal. 2002) .......... 8

*Lew v. Moss*,
797 F.2d 747 (9th Cir. 1986) .......... 4

*Lewis v. Verizon Communications Inc.*,
2010 WL 4645465 (9th Cir. 2010) .......... 9

*Martinez v. Morgan Stanley & Co. Inc.*,
2010 WL 3123175 (S.D. Cal. August 9, 2010) .......... 15

*Newcombe v. Adolf Coors Co.*,
157 F.3d 686 (9th Cir. 1998) .......... 7

*In re Quintus Sec. Litig.*,
148 F. Supp. 2d 967 (N.D. Cal. 2001) .......... 16

*Rhoades v. Progressive Casualty Ins., Co.*,
410 F. App'x 10 (9th Cir. 2010) .......... 9

*State Farm Mut. Auto. Ins. Co. v. Dyer*,
19 F.3d 514 (10th Cir. 1994) .......... 4

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*,
602 F.3d 1087 (9th Cir. 2010) .......... 4

*Washington v. Hovensa LLC*,
652 F.3d 340 (3rd Cir. 2011) .......... 4

**Statutes**

28 U.S.C.
§ 84(a) .......... 17
§ 1332 .......... passim
§ 1441 .......... passim
§ 1446 .......... passim
§ 1453 .......... 1, 3, 4, 18
§ 1711-1715 .......... 3

Cal. Code Civ. Proc.
§ 338 .......... 14
§ 340 .......... 15
§ 415.30 .......... 3

Cal. Lab. Code
§ 203 .......... 13, 14
§ 226 .......... 14, 15
§ 226.7 .......... 9, 10, 11, 12

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, AND TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants AmerisourceBergen Drug Corporation, Cencora, Inc., AmerisourceBergen Services Corporation, and AmerisourceBergen Specialty Group, LLC (collectively, "Defendants") hereby remove the above-entitled action from the Superior Court of the State of California, County of Riverside, to the United States District Court for the Central District of California. In support of this removal, Defendants state as follows:

## I. <u>SUMMARY OF COMPLAINT</u>

1. On April 24, 2026, Plaintiff Carlos Pulido ("Plaintiff" or "Pulido") filed an unverified class action complaint in the Superior Court of the State of California, in and for the County of Riverside, entitled *Carlos Pulido, an individual, on behalf of Plaintiff, and on behalf of all persons similarly situated v. Amerisourcebergen Drug Corporation, a Delaware corporation; Cencora, Inc., a Delaware corporation; Amerisourcebergen Services Corporation, a Delaware corporation; Amerisourcebergen Specialty Group, LLC, a Delaware limited liability company; and DOES 1-50, Inclusive,* Case No. CVRI2602511 ("Complaint"). The Complaint alleges eight causes of action on behalf of Plaintiff and a putative class under California law: (1) violation of the Unfair Competition Law; (2) failure to pay minimum wages; (3) failure to pay overtime wages; (4) failure to provide meal periods; (5) failure to provide rest periods; (6) failure to provide accurate wage statements; (7) failure to pay all wages due upon termination; and (8) failure to reimburse employees for required expenses. Plaintiff defines the putative class as "all persons who are or previously were employed by [Defendants] in California and classified as non-exempt employees at any time during the beginning four (4) years prior to the filing of this Complaint and ending

on the date as determined by the Court." Compl., ¶ 9.

2. On May 1, 2026, counsel for Plaintiff emailed to Defendants' counsel the Notices and Acknowledgements of Receipt – Civil, Summons, Complaint, Civil Case Cover Sheet, Notice of Department Assignment, Alternative Dispute Resolution information package, and Certificate of Counsel. A true and correct copy of the Summons and Complaint is attached as **Exhibit 1** and the summons and other case-initiating documents Plaintiff's counsel emailed to Defendants' counsel is attached as **Exhibit 2**. These documents are incorporated by reference.

3. On May 8, 2026, Plaintiff's counsel served on Defendants' counsel a copy of a Class Action Case Management Order #1, a true and correct copy of which is attached as **Exhibit 3** and is incorporated by reference.

4. On May 21, 2026, Defendants' counsel executed and returned to Plaintiff's counsel the Notices and Acknowledgements of Receipt of Summons. True and correct copies of the signed Notices and Acknowledgements of Receipt are attached as **Exhibit 4** and are incorporated by reference.

5. On June 16, 2026, Plaintiff's counsel served on Defendants' counsel a copy of a Request to Continue June 29, 2026 Case Management Conference, a true and correct copy of which is attached as **Exhibit 5** and is incorporated by reference.

6. On June 18, 2026, Defendants caused their Answer to the Complaint to be filed with the Riverside County Superior Court and served on Plaintiff's counsel. A true and correct copy of Defendants' Answer is attached as **Exhibit 6** and is incorporated by reference.

7. Exhibits 1 through 6 constitute all the pleadings, process, and orders filed and served upon or by Defendants in the superior court action.

## II. THE REMOVAL IS TIMELY

8. This Notice of Removal is timely in that 28 U.S.C. § 1446(b) requires that a notice of removal in a civil action is to be filed within thirty (30) days after service of the summons and complaint. On May 21, 2026, Defendants' counsel

signed and returned the Notices and Acknowledgements of Receipt of Summons to Plaintiff's counsel. Pursuant to California Code of Civil Procedure § 415.30(c), service was completed on May 21, 2026, the date Defendants' counsel signed and returned the written acknowledgements of receipt of summons. Defendants thus have thirty (30) days from May 21, 2026 to file a notice of removal. Thirty (30) days from May 21, 2026, is June 20, 2026. Because June 20 is a Saturday, the deadline for removal falls on Monday June 22. Fed. R. Civ. P. 6(a)(1)(C). Because this Removal is filed on or by June 22, 2026, it is timely.

9. No previous Notice of Removal has been filed or made with this Court in this case.

## III. THIS COURT HAS DIVERSITY JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005 ("CAFA"), 28 U.S.C. §§ 1332(D) AND 1453.

10. This lawsuit is one over which this Court has original jurisdiction under 28 U.S.C. § 1453 because it is a civil action within the meaning of the Acts of Congress relating to removal of class actions. *See* 28 U.S.C. § 1453.

11. This action is brought by a putative representative person on behalf of a proposed class of individuals identified as "all persons who are or previously were employed by [Defendants] in California and classified as non-exempt employees at any time during the beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." Compl., ¶ 9. Plaintiff's action was therefore commenced after the effective date of the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2 (enacted Feb. 18, 2005), codified at 28 U.S.C. §§ 1332(d), 1453 and 1711-1715. As such, this matter is a purported class action as that term is defined in the CAFA, 28 U.S.C. § 1332(d)(1)(B), and 28 U.S.C. § 1453.

12. This Court has original subject matter jurisdiction based on diversity of citizenship under CAFA because this matter was brought as a class action,

diversity of citizenship exists between one or more members of the purported class and Defendants, the number of proposed class members is 100 or greater, and the amount placed in controversy by Plaintiff's Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), 1453.[1] Removal is therefore proper pursuant to 28 U.S.C. §§ 1441, 1446 and 1453.

**A. Complete Diversity of Citizenship Exists.**

13. In order to satisfy CAFA's diversity requirement, a party seeking removal need only plead that minimal diversity exists, such that one putative class member is a citizen of a state different from that of one defendant. 28 U.S.C. § 1332(d)(2); *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1090-91 (9th Cir. 2010) (finding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

**1. Plaintiff Is a Citizen of California.**

14. "An individual is a citizen of the state in which he is domiciled . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

15. Continuing residence creates a presumption of domicile. *Washington v. Hovensa LLC*, 652 F.3d 340, 345 (3rd Cir. 2011); *State Farm Mut. Auto. Ins. Co. v. Dyer*, 19 F.3d 514, 519 (10th Cir. 1994).

---

[1] Defendants do not concede and reserve the right to contest at the appropriate time, Plaintiff's allegations that this action can properly proceed as a class action. Defendants further do not concede that any of Plaintiff's allegations constitute a cause of action under applicable California law.

16. Plaintiff alleges he "has been employed by DEFENDANTS in California since January of 2024." Compl., ¶ 7. Plaintiff does not allege that he was a citizen of any state other than California and there is no indication that Plaintiff is or was a citizen of states other than California at any time relevant to the Complaint. Thus, Plaintiff was domiciled in the State of California, and is therefore a citizen of California for purposes of diversity jurisdiction in this matter.

**2. Defendants Are Citizens of Delaware, Texas, and Pennsylvania.**

17. For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). Cencora, Inc., AmerisourceBergen Drug Corporation, and AmerisourceBergen Services Corporation are, and at all pertinent times were, corporations organized and existing under and by virtue of the laws of the State of Delaware. Plaintiff also alleges that Cencora, Inc., AmerisourceBergen Drug Corporation, and AmerisourceBergen Services Corporation are Delaware Corporations. Compl. ¶¶ 1-3. AmerisourceBergen Specialty Group, LLC is, and at all pertinent times was, a limited liability company organized and existing under and by virtue of the laws of the State of Delaware and is a wholly owned subsidiary of AmerisourceBergen Drug Corporation. Plaintiff also alleges that AmerisourceBergen Specialty Group, LLC is a Delaware limited liability company. Compl. ¶ 4.

18. Currently and prior to and since the commencement of this action, Cencora, Inc., AmerisourceBergen Drug Corporation, and AmerisourceBergen Services Corporation have had their corporate headquarters and principal place of business in Pennsylvania. The majority of Cencora, Inc's, AmerisourceBergen Drug Corporation's, and AmerisourceBergen Services Corporation's executive functions have taken place in Pennsylvania. The greater part of Cencora, Inc's, AmerisourceBergen Drug Corporation's, and AmerisourceBergen Services

Corporation's administrative functions (including payroll, accounting, marketing, and information systems) are in Pennsylvania. Cencora, Inc's, AmerisourceBergen Drug Corporation's, and AmerisourceBergen Services Corporation's officers direct, control, and coordinate the corporations' activities in Pennsylvania. Accordingly, Cencora, Inc., AmerisourceBergen Drug Corporation, and AmerisourceBergen Services Corporation are citizens of Delaware and/or Pennsylvania for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

19. Cencora, Inc., AmerisourceBergen Drug Corporation, and AmerisourceBergen Services Corporation are not and, since the commencement of this action, have not been, incorporated in California and have not had their headquarters or executive offices based in California.

20. Further, currently and prior to and since the commencement of this action, AmerisourceBergen Specialty Group, LLC has had its corporate headquarters in Texas and has maintained significant operations in Texas. The majority of AmerisourceBergen Specialty Group, LLC's executive functions have taken place in Texas. The greater part of AmerisourceBergen Specialty Group, LLC's administrative functions (including payroll, accounting, marketing, and information systems) is in Texas. AmerisourceBergen Specialty Group, LLC's officers direct, control, and coordinate the corporation's activities in Texas. Accordingly, AmerisourceBergen Specialty Group, LLC is a citizen of Texas and Delaware for the purposes of determining diversity. 28 U.S.C. § 1332(c)(1).

21. AmerisourceBergen Specialty Group, LLC is not and, since the commencement of this action, has not been, incorporated in California and has not had its headquarters or executive offices based in California.

22. Based on the Complaint, therefore, at least one member of the putative class is a citizen of a state different from one of the Defendants as the named Plaintiff is a citizen of California, while Defendants are citizens of Delaware, Texas, and Pennsylvania. *See* 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal

diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant"). Thus, minimal diversity exists.

23. Although Plaintiff has listed 50 fictitiously-named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1) (for purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded"); *Newcombe v. Adolf Coors Co*., 157 F.3d 686, 690-91 (9th Cir. 1998) (same).

**B. <u>There Are More Than 100 Putative Class Members.</u>**

24. CAFA's requirement that proposed class membership be no less than 100 (28 U.S.C. §1332(d)(5)) is satisfied here because the putative class has more than 100 members. Plaintiffs seek to represent all current and former non-exempt employees of Defendants in California since April 24, 2022.[2] During the putative class period of April 24, 2022 through the present, Defendants have employed over 100 individuals as non-exempt employees in California.

**C. <u>The Amount-in-Controversy Requirement Is Satisfied.</u>**

25. Pursuant to CAFA, the claims of the individual members in a class action are aggregated to determine if the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(6). A removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 551 (2014).

26. The "defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S.Ct. at 554. "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met. Rather, defendants may

[2] Plaintiff's Complaint defines the class as "all persons who are or previously were employed by [Defendants] in California and classified as non-exempt employees at any time during the beginning four (4) years prior to the filing of this Complaint and ending on the date as determined by the Court." Compl., ¶ 9.

simply allege or assert that the jurisdictional threshold has been met." *Id.,* quoting H.R.Rep. No. 112–10, p. 16 (2011).

27. Moreover, the Senate Judiciary Committee's Report on the final version of CAFA makes clear that any doubts regarding the applicability of CAFA should be resolved in favor of federal jurisdiction. Sen.Rep. No. 109-14, p. 42 (2005) ("If a federal court is uncertain about whether 'all matters in controversy' in a purported class action do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case.").

28. In assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In *Vitran,* the court held that it was proper for a defendant in a putative wage and hour class action to establish the amount in controversy requirement for purposes of CAFA by assuming a minimum number of meal and rest period violations per class member per pay period. 471 Fed. App. at 648. Noting that the plaintiffs alleged that their claims were "typical" of the other putative class members, the court also found it proper to multiply the plaintiffs' claimed damages by the number of putative class members in order to meet the amount in controversy requirement. *Id.* at 649.

29. The Complaint defines the putative class as "all persons who are or previously were employed by [Defendants] in California and classified as non-exempt employees" from April 24, 2022 through the present. Compl., ¶ 9.

30. While Defendants deny Plaintiff's factual allegations and deny that he or the putative class he purports to represent are entitled to any of the relief Plaintiff has requested in the Complaint, it is clear that, when the maximum potential value of the claims of Plaintiff and the putative class members are aggregated, the allegations within Plaintiff's Complaint put into controversy an amount in excess of

$5,000,000.[3] *Rhoades v. Progressive Casualty Ins., Co.*, 410 F. App'x 10, 11 (9th Cir. 2010) ("'Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed $5 million, . . . then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much.'") (quoting *Lewis v. Verizon Communications Inc.*, 2010 WL 4645465, 4 (9th Cir. 2010)).

**1. Plaintiff's Meal Break Claim Places at Least $2,751,020.86 in Controversy.**

31. In the Fourth Cause of Action, Plaintiff alleges that "[d]uring the class period, Defendants failed to provide all the legally required off-duty meal breaks to Plaintiff and the other California Class members as required by the applicable Wage Order and Labor Code. The nature of the work performed by Plaintiff and California Class members did not prevent these employees from being relieved of all of their duties for the legally required off-duty meal periods. As a result of their rigorous work schedules, Plaintiff and other California Class members were often not fully relieved of duty to Defendants for their meal periods. . ." Compl., ¶ 116. Plaintiff also alleges that "Defendants further violated California Labor Code Section 226.7 and the applicable IWC Wage Order by failing to compensate Plaintiff and California Class members who were not provided a meal period, in accordance with the applicable Wage Order, one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." *Id.*, ¶ 117. Plaintiff further alleges that Plaintiff and the putative class

[3] This Notice of Removal discusses the nature and amount of damages placed at issue by Plaintiff's Complaint. Defendants' references to specific damage amounts and their citation to comparable cases are provided solely for the purpose of establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Defendants maintain that each of Plaintiff's claims is without merit and that Defendants are not liable to Plaintiff or any putative class member. In addition, Defendants deny that liability or damages can be established on a class wide basis. Defendants specifically deny that Plaintiff or the putative class have suffered any damages as a result of any act or omission by Defendants. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Plaintiff will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise.

are thus entitled to damages in an amount according to proof of trial, and seek all wages earned and due, interest, penalties, expenses and costs of suit. *Id.*, ¶ 118.

32. California Labor Code Section 226.7 provides that if an employer fails to provide a meal period as required by law, the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal . . . period was not provided." *See also Brinker v. Superior Court*, 53 Cal. 4th 1004, 1039 (2012).

33. The class period is alleged to include the four years prior to the date of the filing of the Complaint. Compl., ¶ 9. Thus, because Plaintiff filed his Complaint on April 24, 2026, the relevant time period for Plaintiff's meal break claim is April 24, 2022, through the present. According to Defendants' records, from April 24, 2022, through the present, non-exempt employees in California have worked approximately 320,037 shifts over five hours. The average hourly rate of pay for these employees during the putative class period is estimated to be $21.49/hr.

34. Based on Plaintiff's allegation that Plaintiff and other putative class members were not provided lawful meal breaks (which Defendants deny), Defendants assume that at least 40% of the 320,037 shifts over five hours have a non-compliant meal break, which equates to a total of approximately 128,014 shifts with alleged non-compliant meal breaks. Compl., ¶ 21. As such, the amount in controversy under Labor Code Section 226.7 for alleged failure to provide meal breaks is at least $2,751,020.86 (128,014 alleged non-compliant meal breaks shifts x $21.49 average wage rate).

**2. <u>Plaintiff's Rest Break Claim Places at Least $2,821,443.59 in Controversy.</u>**

35. In the Fifth Cause of Action, Plaintiff alleges "[f]rom time to time, Plaintiff and other California Class members were required to work in excess of four (4) hours without being provided ten (10) minute rest periods. Further, these

employees were denied their first rest periods of at least ten (10) minutes for some shifts worked of at least two (2) to four (4) hours, a first and second rest period of at least ten (10) minutes for some shifts worked of between six (6) and eight (8) hours, and a first, second and third rest period of at least ten (10) minutes for some shifts worked of ten (10) hours or more. Plaintiff and other California Class members were also not provided with one-hour wages *in lieu* thereof. As a result of their rigorous work schedules, Plaintiff and other California Class members were periodically denied their proper rest periods by Defendants and Defendants' managers." Compl., ¶ 120 (emphasis in original). Plaintiff also alleges that "Defendants further violated California Labor Code Section 226.7 and the applicable IWC Wage Order by failing to compensate Plaintiff and California Class members who were not provided a rest period, in accordance with the applicable Wage Order, one additional hour of compensation at each employee's regular rate of pay for each workday that a meal period was not provided." *Id.*, ¶ 121. Plaintiff further alleges that Plaintiff and the putative class are thus entitled to damages in an amount according to proof of trial, and seek all wages earned and due, interest, penalties, expenses and costs of suit. *Id.*, ¶ 122.

36. Labor Code Section 226.7 provides that if an employer fails to provide rest periods as required by law, the employer shall pay "one additional hour of pay at the employee's regular rate of compensation for each work day that the . . . rest period was not provided." *See also Brinker*, 53 Cal. 4th at 1039.

37. The class period is alleged to include the four years prior to the date of the filing of the Complaint. Compl., ¶ 9. Thus, because Plaintiff filed his Complaint on April 24, 2026, the relevant time period for Plaintiff's rest break claim is April 24, 2022, through the present. According to Defendants' records, from April 24, 2022, through the present, non-exempt employees in California have worked approximately 328,228 shifts of 3.5 hours or longer. The average hourly rate of pay for these employees during the putative class period is estimated to be

$21.49.

38. Based on Plaintiff's allegation that Plaintiff and other putative class members were not provided lawful rest breaks (which Defendants deny), Defendants assume that at least 40% of the 328,228 shifts of 3.5 hours or longer have a non-compliant rest break, which equates to a total of approximately 131,291 shifts with alleged non-compliant rest breaks. As such, the amount in controversy under Labor Code Section 226.7 for alleged failure to provide rest breaks is at least $2,821,443.59 (131,291 alleged non-compliant rest break shifts x $21.49 average wage rate).

**3. Plaintiff's Minimum Wage Claim Places at Least $416,910 in Controversy.**

39. In the Second Cause of Action, Plaintiff alleges that "Defendants maintained a uniform wage practice of paying Plaintiff and the other members of the California Class without regard to the correct amount of time they work. As set forth herein, Defendants' uniform policy and practice was to unlawfully and intentionally deny timely payment of wages due to Plaintiff and the other members of the California Class." Compl., ¶ 90. Plaintiff further alleges "Defendants uniform pattern of unlawful wage and hour practices manifested, without limitation, applicable to the California Class as a whole, as a result of implementing a uniform policy and practice that denies accurate compensation to Plaintiff and the other members of the California Class in regard to minimum wage pay." *Id.*, ¶ 91. Plaintiff further alleges that "Defendants knew or should have known that Plaintiff and the other members of the California Class were under-compensated for their time worked. Defendants systematically elected, either through intentional malfeasance or gross nonfeasance, to not pay employees for their labor as a matter of uniform company policy, practice and procedure, and Defendants perpetrated this systematic scheme by refusing to pay Plaintiff and the other members of the California Class the correct minimum wages for their time worked." *Id.*, ¶ 96.

Based on these alleged violations, Plaintiff and the Class seek unpaid wages, interest, and statutory costs and penalties. *Id.*, ¶ 98.

40. The class period is alleged to include the four years prior to the date of the filing of the Complaint. *Id.*, ¶ 9. Thus, because Plaintiff filed his Complaint on April 24, 2026, the relevant time period for Plaintiff's minimum wage claim is April 24, 2022 through the present.

41. According to Defendants' records, since April 24, 2022, Defendants have employed approximately 1,200 non-exempt employees in California and these employees have worked approximately 333,536 shifts during the relevant period. The lowest minimum wage during the applicable period was $15.00 per hour.

42. Based on Plaintiff's allegation that Defendants failed to pay all wages (which Defendants deny), Defendants reasonably estimate that Plaintiff is seeking at least 5 minutes off-the-clock work for each shift, which equates to approximately 27,794 hours of alleged off-the-clock work. This alleged uncompensated time for non-exempt employees in California since April 24, 2022 results in an amount in controversy of at least $416,910 (27,794 hours x $15.00 (lowest minimum wage) = $416,910).

**4. <u>Plaintiff's Waiting Time Penalties Claim Places Approximately $3,018,607.20 in Controversy.</u>**

43. In his Seventh Cause of Action, Plaintiff alleges "the employment of Plaintiff and many California Class members terminated, and Defendants have not tendered payment of wages to these employees who missed meal and rest breaks, as required by law." Compl. ¶ 134. Plaintiff further alleges that "[t]herefore, as provided by California Labor Code Section 203, on behalf of themselves and the members of the California Class whose employment has ended, Plaintiff demands up to thirty (30) days of pay as penalty for not paying all wages due at time of termination for all employees who terminated employment during the Class Period and demand an accounting and payment of all wages due, plus interest and

statutory costs as allowed by law. *Id.*, ¶ 135.

44. The statute of limitations for "waiting time" penalties under Labor Code Section 203 is three years. *See* Labor Code § 203; Cal. Code of Civ. Pro. § 338. Thus, because Plaintiff filed his Complaint on April 24, 2026, the relevant time period for Plaintiff's claim for waiting time penalties runs since April 24, 2023.

45. According to Defendants' records, approximately 593 hourly, non-exempt employees in California have separated from their employment since April 24, 2023. At the time of their separation with Defendants, the average hourly rate for these employees was approximately $21.21.

46. As such, the amount of waiting time penalties at issue, based on Plaintiff's allegations, is estimated to be $3,018,607.20 (593 formerly employed employees x $21.21 per hour x 8 hours per day x 30 days = $3,018,607.20).

**5. <u>Plaintiff's Wage Statement Claim Places at Least $997,350 in Controversy.</u>**

47. In the Sixth Cause of Action, Plaintiff alleges "[w]hen Defendants did not accurately record Plaintiff's and other California Class members' missed meal and rest breaks, or paid inaccurate missed meal and rest break premiums, or did not pay for all hours worked, Defendants violated California Labor Code Section 226 in that Defendants failed to provide Plaintiff and other California Class members with complete and accurate wage statements which failed to show, among other things, all deductions, the accurate gross wages earned, net wages earned, the total hours worked and all applicable hourly rates in effect during the pay period and the corresponding amount of time worked at each hourly rate, and correct rates of pay for penalty payments or missed meal and rest periods." Compl., ¶ 125. Plaintiff further alleges that "Defendants failed to provide itemized wage statements to Plaintiff and members of the California Class that complied with the requirements of California Labor Code Section 226(a)(1)-(9)." *Id.* ¶ 126.

Based on these alleged violations, Plaintiff and the Wage Statement Class Members seek damages pursuant to Labor Code § 226. *Id.*, ¶ 127.

48. Labor Code section 226(e) provides that an employee is entitled to recover the greater of all actual damages or $50 for the initial alleged violation and $100 for each alleged subsequent violation, up to a maximum of $4,000, plus costs and reasonable attorneys' fees, if an employer knowingly and intentionally fails to provide an accurate, itemized wage statement. Cal. Lab. Code § 226(e).

49. There is a one-year statute of limitations on Plaintiff's wage statement claim. *See* Cal. Code Civ. Proc. §340(a); *Martinez v. Morgan Stanley & Co. Inc.*, 2010 WL 3123175, at *6 (S.D. Cal. August 9, 2010). Thus, because Plaintiff filed his Complaint on April 24, 2026, the relevant time period for Plaintiff's wage statement claim is April 24, 2025 through the present.

50. Since April 24, 2025, Defendants employed approximately 749 non-exempt employees in California. During this period, Defendants paid its non-exempt employees in California on a bi-weekly basis. Since April 24, 2025, these 749 non-exempt employees are estimated to have worked approximately 10,348 pay periods.

51. As such, Plaintiff's wage statement claim places at least $997,350 in controversy [749 initial pay periods x $50) + (9,599 subsequent pay periods x $100 for subsequent violation)].

**6. <u>The Amount in Controversy for Plaintiff's Claims Exceeds $5,000,000.</u>**

52. As demonstrated above, the alleged damages on Plaintiff's Second, Fourth, Fifth, Sixth, and Seventh Causes of Action, total at least $10,005,331.65. In addition, Plaintiff also seeks recovery for himself and all putative members for attorneys' fees[4] and further causes of action, including unpaid overtime pay. Each

______________________

of these claims, if added to the aggregate potential damages, further increases the amount in controversy.

53. Based on the calculations outlined above, the potential total amount in controversy exceeds $5,000,000.00 as follows:

| **Claim** | **Amount in Controversy** |
|---|---|
| Unpaid wages | $416,910 |
| Meal period premiums | $2,751,020.86 |
| Rest period premiums | $2,821,443.59 |
| Waiting Time Penalties | $3,018,607.20 |
| Wage Statement Violations | $997,350.00 |
| Attorneys' Fees | $2,501,332.91 |
| **TOTAL:** | **$12,506,664.56** |

54. Thus, although Defendants deny Plaintiff's allegations and theories of maximum recovery, deny that he or the putative class he purports to represent are entitled to any of the relief for which they have prayed, and expressly reserve all their defenses, based on Plaintiff's allegations, the potential amount in controversy on only *six* of Plaintiff's *eight* claims for damages exceeds the $5,000,000 threshold set forth under 28 U.SC. §1332(d)(2).

55. Therefore, Plaintiff's Complaint satisfies the amount in controversy requirement under CAFA.

---

[4] Attorneys' fees are properly included in determining the amount in controversy if the law under which the plaintiff has brought suit allows for their recovery. *See Fritsch v. Swift Transportation Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("Because the law entitles [the plaintiff] to an award of attorneys' fees if he is successful, such future attorneys' fees are at stake in the litigation, and must be included in the amount in controversy."). For purposes of class actions, attorneys' fees may be calculated by assuming 25 percent of the potential damages on claims for which attorneys' fees are available. *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund). Here, attorneys' fees are arguably recoverable on all Plaintiff's claims. Therefore, the amount in controversy for attorneys' fees is at least $2,501,332.91 ($10,005,331.65 x 0.25).

## IV. THE OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

56. As set forth above, this Notice of Removal is filed within thirty days of service of process on Defendants and all process, pleadings, and orders that have been served on Defendants in this action are attached hereto.

57. Venue lies in the Central District of California pursuant to 28 U.S.C. § 1441(a), 1446(a) and 84(a). This action was originally brought in the Superior Court of the State of California, County of Riverside, and arises in part out of Plaintiff's employment there. Compl., ¶¶ 7, 18. Therefore, this is the appropriate Court for removal.

58. As required by 28 U.S.C. § 1446(d), Defendants will promptly serve Plaintiff with this Notice of Removal and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California, County of Riverside.

59. Defendants are informed and believe and on that basis allege that none of the fictitiously-named defendants have been identified by Plaintiff or served with the Summons and Complaint.

60. Defendants have sought no similar relief.

61. The prerequisites for removal under 28 U.S.C. §§ 1332(a), (d), 1441 and 1446 have been met.

62. If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present a brief and oral argument in support of its position that this case is removable.

63. By this Notice of Removal and the exhibits attached hereto and the documents filed concurrently herewith, Defendants do not intend to make any admissions of fact, law or liability relating to the claims in the Complaint, and it expressly reserves the right to make any and all defenses and motions necessary in its defense against Plaintiff's allegations.

## V. CONCLUSION

64. Pursuant to these statutes and in accordance with the procedures set forth in 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendants pray that the above-captioned action pending in the Superior Court of the State of California, County of Riverside, be removed therefrom to the United States District Court for the Central District of California.

Dated: June 22, 2026

MORGAN, LEWIS & BOCKIUS LLP

By *\/s/ Andrew P. Frederick*
Andrew P. Frederick
Michelle L. Quach

Attorneys for Defendants
AMERISOURCEBERGEN DRUG CORP.; CENCORA, INC.; AMERISOURCEBERGEN SERVICES CORP.; AMERISOURCEBERGEN SPECIALTY GROUP, LLC